IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| IN RE | : | CHAPTER 13 |
| OTIS WILLIAM TERRY, | : | |
| DEBTOR. | : | BANKRUPTCY NO. 13-14780-MDC |

## MEMORANDUM

BY: MAGDELINE D. COLEMAN, UNITED STATES BANKRUPTCY JUDGE

### INTRODUCTION

On September 29, 2014, the City of Philadelphia (the "City") filed a Notice of Appeal seeking review of a Consent Order entered by this Court on September 18, 2014 (the "Consent Order"). The Consent Order resolved a dispute between Otis W. Terry (the "Debtor") and 2013 N. 16th Street, LLC ("2013 LLC") regarding their respective interests in certain real estate located at 7128 Mount Airy Place, Philadelphia, Pennsylvania (the "Property") following a tax sale conducted by the Sheriff of Philadelphia (the "Sheriff"). The Order was issued in accordance with the Court's July 21, 2014, bench ruling. This Memorandum Opinion is submitted pursuant to Local Rule 8001-1(b) to further expound upon the reasons for the ruling.

### FACTUAL AND PROCEDURAL BACKGROUND

On September 19, 2012, the Sheriff conducted a tax sale to collect unpaid taxes due on the Property (the "Sheriff's Sale"). 2013 LLC was the successful bidder and paid $120,000 to the Sheriff. On December 11, 2012, the Sheriff signed and delivered a deed evidencing the transfer of the Property to 2013 LLC (the "Tax Deed"). The Tax Deed evidencing the sale was recorded on January 5, 2013. Shortly thereafter, 2013 LLC filed in the Philadelphia Court of Common Pleas a Complaint in Ejectment dated January 10, 2013, Case ID: 130100821 (the

"Ejectment Action"), against the Debtor and Patricia Terry, the Debtor's sister and co-owner of the Property. After no answer was filed in the Ejectment Action, 2013 LLC filed a Praecipe for Entry of Default Judgment dated April 2, 2013. On the next day, April 3, 2013, 2013 LLC filed a Praecipe for Writ of Possession. On May 30, 2013 (the "Petition Date"), the Debtor filed a voluntary petition under Chapter 13 of the Bankruptcy Code, 11 U.S.C. §101 *et seq*. (the "Bankruptcy Code") thereby staying the Ejectment Action. *In re Terry*, 505 B.R. 660, 661-62 (Bankr. E.D. Pa. 2014).

Shortly after the Petition Date, 2013 LLC filed a motion dated June 4, 2013, requesting relief from the automatic stay to allow 2013 LLC to continue the Ejectment Action. The Debtor objected and, with the aid of the parties' briefing of the issues, this Court held a hearing on June 27, 2013, to address the request for relief. This Court entered an order dated August 14, 2013 [Docket No. 27] (the "First Lift-Stay Order"). In the First Lift-Stay Order, this Court addressed whether the Debtor held any interest in the relevant property. As elaborated by the First Lift-Stay Order, this Court determined that the Debtor held an unexpired right to redeem the Property that, upon his filing for Chapter 13 relief, inured to the benefit of his estate.

After this Court denied 2013 LLC's first request for relief, 2013 LLC filed a second motion dated October 7, 2013 [Docket No. 37], asserting new arguments in support of its request for relief from the automatic stay. In the second motion, 2013 LLC argued that, to the extent the Debtor held a right of redemption, the Debtor's right of redemption expired after the Debtor failed to tender on or before September 12, 2013, the full amount due pursuant to 53 P.S. §7293. After hearing the parties' arguments and receiving their post-hearing briefing, this Court denied 2013 LLC's second request for relief. For the reasons stated by this Court's Memorandum dated

2

February 24, 2014,[1] this Court determined that the Debtor was able to exercise his right of redemption by filing his proposed plan prior to the running of the redemption period. Broadly speaking, the Debtor may, consistent with §1322(b), redeem the Property by stretching the payment of the Redemption Amount to 2013 LLC over the Debtor's Chapter 13 plan period. *In re Terry*, 505 B.R. at 666.

The issuance of this Court's decision appeared to end the dispute between the Debtor and 2013 LLC and an amicable resolution of *their dispute* appeared on the horizon. To this end, the Debtor filed a Stipulation of Settlement dated June 25, 2014 (the "Stipulation"). Pursuant to the Stipulation, the Debtor, Patricia Terry, 2013 LLC and Todd Joseph[2] ("Joseph," collectively with the Debtor, Patricia Terry, 2013 LLC, the "Settling Parties") attempted to resolve the Debtor's exercise of his unexpired right to redeem the Property. To that end, the Settling Parties requested this Court enter a consent order that provided for 2013 LLC to be designated as the holder of an allowed claim in the amount of $125,624.66 secured by the Debtor's interest in the Property.[3] With regard to repayment of this claim, the Stipulation requested this Court approve the following repayment schedule: (1) an initial payment to 2013 LLC in the amount of $14,000.00 upon the entry of the order confirming the settlement; (2) a payment in the amount of $64,000.00 consisting of funds to be reimbursed by the Sheriff to the Debtor; and (3) 44 monthly payments in the amount of $1,200.00 commencing 20 days after the effective date of the Debtor's Chapter 13 plan. In the proposed consent order attached to the Stipulation, the Settling Parties also included language directing the Sheriff to turn over to the Debtor any funds in his possession as a result of the Sheriff's Sale. Finally and apparently of salience to the City's appeal of the Consent

---

[1] *In re Terry*, 505 B.R. 660 (Bankr. E.D. Pa. 2014).

[2] Joseph is the principal of 2013 LLC.

[3] The Stipulation provides that 2013 LLC's lien shall be imposed pursuant to §550(e)(1).

3

Order, the Stipulation requested that this Court enter an order declaring void, pursuant to §§544(c) and 548(a)(1), the Tax Deed evidencing 2013 LLC's ownership interest in the Property that 2013 LLC obtained as a result of the Sheriff's Sale.

On July 21, 2014, this Court held a hearing (the "Hearing") to address the relief requested by the Settling Parties pursuant to the Stipulation. Prior to the Hearing, the City filed its Objection. In the Objection, the City purported to state two arguments in support of its request that this Court deny the relief sought by the Settling Parties. However, this Court read the Objection to assert three arguments. First, the City argued that the Debtor lacks standing to enter into the Stipulation or otherwise obtain the relief effectuated by the Consent Order. Second, the City argued that application of the *Rooker-Feldman* Doctrine divests this Court of jurisdiction to grant the relief sought by the Stipulation. Third, the City argued that absent the joinder of the Sheriff this Court may not enter the proposed consent order attached to the Stipulation. At the Hearing, this Court addressed City's arguments and overruled the City's first and second objections.[4] For the reasons elaborated below, this Court determined that the *Rooker-Feldman* Doctrine did not apply to this Court's consideration of the Stipulation or to this Court's authority to grant the relief embodied by the Consent Order.

With regard to the City's third argument, this Court shared the City's misgivings about the language of the proposed consent order attached to the Stipulation that ordered the Sheriff, a

---

[4] This Court summarily denied the City's argument that the Debtor lacked standing to request the relief sought by the Stipulation. In arguing that the Debtor lacks standing to assert §§544 or 548 claims, the City overlooked §522(h). In relevant part, §522(h) provides:

> The debtor may avoid a transfer of property of the debtor or recover a setoff to the extent that the debtor could have exempted such property under subsection (g)(1) of this section if the trustee had avoided such transfer, if--
> (1) such transfer is avoidable by the trustee under section 544, 545, 547, 548, 549, or 724(a) of this title or recoverable by the trustee under section 553 of this title; and
> (2) the trustee does not attempt to avoid such transfer.

11 U.S.C. §522(h). After this Court directed the City's attention to this section of the Code, this Court understood the City to have withdrawn its challenge to the Debtor's standing.

4

nonparty, to take specific actions. For this reason, this Court provided line-by-line comments as to how the proposed consent order should be amended to remove any language directed to the Sheriff. This Court specifically instructed the Debtor to remove language directing the Sheriff to pay the Overbid Amount (defined below) to the Debtor. Audio recording of Hearing 7/21/2014 @ 1:27 p.m. (2:06:49 to 2:08:17) Bky. No. 13-14780MDC (instructing parties to remove language directing the Sheriff to take specific action).

In addition, the Settling Parties agreed to amend the consent order to address the City's concerns regarding the continued validity of the Sheriff's Sale. For example, the Settling Parties expressly conceded that the language of an amended consent order would make clear that the occurrence of the Sheriff's Sale was not to be avoided. Rather, any amended consent order would indicate that the exercise of the Debtor's §544 powers was limited to the avoidance of the interest held by 2013 LLC as a result of the Sheriff's Sale and as evidenced by the Tax Deed. Audio recording of Hearing 7/21/2014 @ 1:27 p.m. (2:13:15 to 2:13:43) Bky. No. 13-14780MDC.

Based upon this Court's instructions and the concessions offered by the Settling Parties, this Court concluded that the City's concerns that motivated its filing of the Objection were satisfied. Audio recording of Hearing 7/21/2014 @ 1:27 p.m. (2:23 to 2:25) Bky. No. 13-14780MDC. To ensure everyone understood the Court's ruling and instructions, this Court ordered the Settling Parties to prepare an amended consent order and circulate it among all parties to insure that all parties, inclusive of the City, consented to its language. If the parties had any unresolved issues that could not be resolved on a consensual basis, this Court stated that the parties should schedule a telephonic conference to enable the Court to address those

5

concerns. Audio recording of Hearing 7/21/2014 @ 1:27 p.m. (2:22:50 to 2:23) Bky. No. 13-14780MDC.

After the conclusion of the Hearing, nearly two months passed before any party took action. On September 18, 2014, the Debtor filed a Proposed Consent Order [Docket No. 92]. Assuming that the parties had acted in accordance with this Court's instructions, this Court executed the Consent Order and caused it to be filed on the Debtor's bankruptcy case docket.

**The Turnover Adversary Proceeding**

Concurrent with this Court's adjudication of the Settling Parties' interest in the Property, this Court has also presided over an adversary proceeding filed by the Debtor against the Sheriff and the City (together with the Sheriff, the "City Parties"). On June 20, 2014, the Debtor filed a complaint naming the City Parties initiating an adversary proceeding seeking turnover of the Debtor's property in the possession of the City Parties. Specifically, the Debtor's seeks an order compelling the Sheriff to deliver $65,667.07 that consists of the proceeds of the Sheriff's Sale after the payment of all lien holders (the "Overbid Amount"). The Debtor contends that despite his demands and the Sheriff's apparent §542(a) obligations,[5] the Sheriff has not delivered the Overbid Amount to the Debtor or the Chapter 13 trustee.

After the Sheriff filed his answer, this Court held on August 27, 2014, a pre-trial hearing (the "Pre-Trial Hearing"). At the Pre-Trial Hearing, the Debtor's counsel and the Sheriff's counsel[6] advised this Court that the parties were on the verge of settlement of the Debtor's claim for turnover of the Overbid Amount. The parties further advised this Court that the only remaining issue in the adversary is the Debtor's request that this Court find the Sheriff to be in contempt and assess damages resulting from the Sheriff's alleged stay violation. Thereafter, the

---

[5] The actual scope and existence of these obligations remains to be decided.

[6] The Sheriff and the City are represented by the same counsel.

6

Debtor filed a proposed consent order that provided for the turnover of the Overbid Amount within fifteen days of the entry of the order. The potential liability of the City Parties for their alleged violation of the automatic stay remains pending before this Court.

**LEGAL DISCUSSION**

As stated, this Court ultimately granted the City's Objection with regard to its argument that this Court lacks the authority to issue an order addressed to a nonparty. Because this Court's analysis of the City's own standing to file the Objection is intertwined with this Court's analysis of whether the Sheriff was a necessary party, this Court will first address its reasoning on both issues concurrently. Second, this Court will elaborate upon its reasoning with regard to the application of the *Rooker-Feldman* Doctrine.

**The City's Standing and Whether the Sheriff was a Necessary Party**

At the Hearing, this Court raised whether the City had standing to object to the Stipulation. *See, e.g.*, Audio recording of Hearing 7/21/2014 @ 1:27 p.m. (1:52 1:54) Bky. No. 13-14780MDC (asking counsel for the City how his clients have standing to object to the Stipulation). *Marin v. Leslie*, 337 Fed. Appx. 217, 219 (3d Cir. 2009) (stating courts are required to raise questions of standing); *Addiction Specialists, Inc. v. Twp. of Hampton*, 411 F.3d 399 (3d Cir. 2005) (same). As recognized by the Third Circuit, "Article III standing and standing under the Bankruptcy Code are effectively coextensive." *In re Global Indus. Technologies, Inc.*, 645 G.3d 201, 210 (3d Cir. 2011). Therefore, to have standing to assert its Objection, the City must allege "a specific, identifiable trifle of injury." *In re Global Indus. Technologies, Inc.*, 645 G.3d 201, 210 (3d Cir. 2011); *see also National R.R. Passenger Corp. v. Pa. PUC*, 342 F.3d 242, 254 (3d Cir. 2003) (stating that to have standing to sue, a party must show (1) she suffered an injury, (2) a causal connection between the alleged injury and the conduct being challenged, and (3)

redressability). Without a quantifiable interest in the outcome of this Court's consideration of the Stipulation, the Court understood the City to lack a right to be heard at the Hearing. *In re Food Barn Stores, Inc.*, Bky. No. 93-40012, 1994 WL 744523, *2 (W.D. Mo. 1994) (stating that party did not have any right to participate in settlement hearing because the party "had no vested interest in, or rights to, the property"). Problematically, the City did not offer in its Objection or in its arguments at the Hearing how it may be injured by this Court's consideration of the Stipulation or the relief contemplated therein.

Although the City is a creditor of the Debtor[7] and is therefore a "party in interest"[8] who enjoys a broad right to participation in the administration of the Debtor's bankruptcy,[9] this Court remains skeptical that the City's broad right to participation extends to the instant controversy. *See, e.g., Eichenholtz v. Brennan*, 52 F.3d 478, 482 (3d Cir. 1995) (recognizing that non-settling defendants generally lack standing to object to a partial settlement unless the settlement affects a legal claim or cause of action belonging to the non-settling defendant). *In re Quigley Co., Inc.*, 391 B.R. 695, 703 (Bankr. S.D.N.Y. 2008) ("although a party in interest may object to confirmation of a plan, 11 U.S.C. §1128(b), it cannot challenge portions of the plan that do not affect its direct interests."); *In re Orlando Investors, L.P.*, 103 B.R. 593, 596-97 (Bankr. E.D. Pa. 1989) (creditors "have standing only to challenge those parts of a reorganization plan that affect

---

[7] On June 25, 2014, the City filed a Proof of Claim evidencing a "Municipal Claim" against the Debtor in the amount of $816.63. The Proof of Claim states that entirety of the City's claim is entitled to priority pursuant to §507(a)(8) as relating to taxes or penalties owed to governmental units. In addition, the Proof of Claim contains no reference to the Property and states explicitly that the City's claim is not secured. Accordingly, it appears that the City's claim against the Debtor is wholly unrelated to the matters addressed by the Consent Order.

[8] "Courts have held that the test to determine whether an entity is a party in interest is whether the prospective party in interest has a sufficient stake in the outcome of the proceeding so as to require representation." *In re Stone & Webster, Inc.*, 373 B.R. 353 (Bankr. D. Del. 2007) (addressing motion to intervene premised on §1109(b)).

[9] Chapter 13 does not include a definition of the term "party in interest." For guidance, courts addressing the issue in the Chapter 13 context have relied upon Section 1109(b) of the Bankruptcy Code which provides:

> A party in interest, including the debtor, the trustee, a creditors' committee, an equity security holders' committee, a creditor, an equity security holder, or any indenture trustee, may raise and may appear and be heard on any issue in a case under this chapter.

11 U.S.C §1109(b); *In re Jensen*, 369 B.R. 210, 230 (Bankr. E.D. Pa. 2007) (observing §1109, for purposes of Chapter 13 proceedings, "provides guidance in understanding who Congress meant to encompass within the phrase 'a party in interest.'").

their direct interests."). Despite §1109(b)'s broad language, a party's status as a creditor does not entitle it to be heard with regard to every matter in a Debtor's bankruptcy. *In re Morris Publishing Group* LLC, Bky. No. 10-10134, 2010 WL 599393 (Bankr. S.D. Ga. Feb. 10, 2010) ("§1109 does not give every party in interest the right to seek relief on every issue."); *In re Stone & Webster, Inc.*, 373 B.R. 353, 361 (Bankr. D. Del. 2007) ("although the language of §1109(b) suggests a broad application and makes no mention of standing, courts have held that parties that wish to intervene must show that they have constitutional standing."). At the Hearing, counsel for the City conceded that the Settling Parties were entitled to agree among themselves as to how the Overbid Amount should be distributed. Audio recording of Hearing 7/21/2014 @ 1:27 p.m. (2:05:00 to 2:05:40) Bky. No. 13-14780MDC (asking counsel for the City Parties how his clients have standing to object to the Stipulation).

That being said, the original consent order proposed by the Settling Parties did have *one* paragraph directed to the City Parties' potential interests. In relevant part, the proposed consent order attached to the Stipulation provided:

> 9. The Sheriff of the City of Philadelphia is hereby **ORDERED** to forthwith turnover to counsel for the Debtor such funds as are in his possession remaining from the Tax Sale of 7128 Mount Airy Place so that they can be paid out in accordance with the aforementioned Stipulation of Settlement.

Stipulation, Exh. 1, ¶9.

Admittedly, this language is directed at the Sheriff who is, technically speaking, a nonparty to the dispute between the Settling Parties. However, it is hard to imagine how the City's or the Sheriff's legally-protected interests are impacted by this controversy. The City does not appear to dispute whether the Sheriff is obligated to deliver the Overbid Amount to the Chapter 13 trustee. This obligation is self-executing and, and assuming the Overbid Amount is

9

the Debtor's property,[10] no order is required to compel the immediate delivery of the Overbid Amount. As soon as the City or the Sheriff became aware of the Debtor's bankruptcy, the City and the Sheriff were obligated to deliver the Debtor's property in the City's possession to the Chapter 13 trustee. *See, e.g., In re Westman*, 300 B.R. 338, 346 (Bankr. D. Minn. 2003) ("the Sheriff may also be considered a custodian of the property with knowledge of the commencement of the case and is required under section 543 to deliver 'to the trustee,' not to the debtor, any property."). Absent an objection by the Chapter 13 trustee, this Court does not believe that the City is injured by the Settling Parties agreeing between themselves that the Sheriff should be instructed to deliver, in performance of its existing legal obligations, the Overbid Amount to a different party.

Arguably, the original relief sought by the Stipulation could be said to have varied the Sheriff's existing obligations because the proposed consent order provided for the delivery of the Overbid Amount to the Debtor, and not the Trustee. On this basis, the Sheriff and the City may be said to have a trifling interest in the adjudication of the matters presented by this Court's consideration of the Stipulation. Despite this Court's doubts as to the City's ability to bootstrap the Sheriff's possession of the Debtor's property[11] into a right to dictate to the Debtor how those funds are spent after turnover, this Court instructed the Settling Parties to file an amended consent order deleting any language directed to the Sheriff. Upon the consent of the Settling Parties to this instruction, this Court determined at the Hearing that the issue of its authority to issue an order directed to a nonparty did not remain live.

---

[10] Had the City not filed its Objection, there would be no implication that the Consent Order or any other order effectuating the relief requested by the Settling Parties would preclude the relitigation of this issue. *Raytech Corp. v. White*, 54 F.3d 187, 190 (3d Cir. 1995) (acknowledging that issue preclusion requires the party to have been a party or in privity to a party to the prior case).

[11] This Court expressly refrains from addressing whether the City is entitled to retain the Overbid Amount. *See, e.g.*, *United States v. Whiting Pools, Inc*., 462 U.S. 198, 205 (1983) (recognizing that a creditor who has possession of property in which a debtor has an interest at the time a bankruptcy petition is filed has an obligation to immediately return the property to the debtor's estate upon receiving notice of the petition); *In re Dean*, 490 B.R. 662, 667 (Bankr. M.D. Pa. 2013) (adopting majority view that creditor has affirmative duty to turnover property once notified of filing).

10

**Application of the *Rooker-Feldman* Doctrine**

The *Rooker–Feldman* Doctrine[12] provides federal courts lack subject matter jurisdiction over "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005). The *Rooker-Feldman* Doctrine arises from 28 U.S.C. §1257 and posits that "federal district courts and federal courts of appeals lack jurisdiction to review or reverse a state court judgment on the merits." *In re James*, 940 F.2d 46, 53 (3d Cir. 1991) (holding that bankruptcy court lacked jurisdiction to address merits of state court forfeiture proceeding). The Doctrine recognizes that "appellate review of the state-court judgment [is] a task entrusted by statute solely to the Supreme Court." *Great Western Mining & Mineral Co., Inc. v. Fox Rothschild LLP*, 615 F.3d 159, 164 (3d Cir. 2010); *Easley v. New Century Mortg. Corp.*, 394 Fed. Appx. 946, 948 (3d Cir. 2010); *Perkins v. Beltway Capital, LLC*, 773 F.Supp.2d 553, 557 (E.D. Pa. 2011). As stated by *Great Western*, a federal court lacks jurisdiction only if (1) the federal plaintiff lost in state court; (2) the plaintiff complains of injuries caused by the state-court judgment; (3) the judgment was rendered before the federal suit was filed; and (4) the plaintiff is inviting the district court to review and reject the state judgment. *Great Western*, 615 F.3d at 166; *In re D'Angelo*, 475 B.R. 424, 442 (Bankr. E.D. Pa. 2012). Whether the relief sought in a federal action is "inextricably intertwined" with a prior state court judgment is not determinative of a court's jurisdiction.[13] Rather, the Third Circuit has characterized the phrase "inextricably

---

[12] The *Rooker-Feldman* Doctrine is named for *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923) and *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983).

[13] *Reiter v. Washington Mut. Bank*, 455 Fed. Appx. 188, 191 n.4 (3d Cir. 2011) (recognizing that, although district court reached the correct result, its discussion of whether the plaintiff's claims were "inextricably intertwined with the state court adjudications" was, as a result of *Great Western*, an incorrect statement of the *Rooker-Feldman* doctrine); *In re Stewart*, 473 B.R. 612, 633 (Bankr. W.D. Pa. Bankr. 2012) (recognizing that in *Great Western* the Third Circuit "exchanged the 'inextricably intertwined' language associated with *Rooker–Feldman* in favor of the four part test").

intertwined" to be merely "a descriptive label" of claims that are identified by the four-part test. *Great Western*, 615 F.3d at 169. Generally speaking, the Doctrine provides that federal courts lack jurisdiction to adjudicate claims when the adjudication of such claims would have the effect of reviewing the merits, or otherwise negating, an existing state court judgment.[14]

**Who is the Plaintiff?**

Determination of the first prong of the *Great Western* test is made murky by the absence of a "plaintiff." Arguably, the Debtor is the "plaintiff" in that the Debtor has, in effect, sued 2013 LLC and Joseph to enforce the Debtor's "unexpired right to redeem the Property." *Terry*, 505 B.R. at 662 (stating "this Court determined that the Debtor held an unexpired right to redeem the Property."). In this light, this Court considered the Debtor to be the "plaintiff" for purposes of addressing the *Great Western* test.

**Whether the "Plaintiff" Lost in State Court?**

The Debtor unquestionably lost in state court as his interest in the Property was sold pursuant to the Sheriff's sale. As a result, the first prong was satisfied.

**Whether the "Plaintiff" Complains of Injuries Caused by the State-Court Judgment?**

The City argued that the relief contemplated by the Stipulation was improper because it proposed to void the Sheriff's Sale that occurred on September 19, 2012. On its face, it appears that the Plaintiff is complaining of injuries caused by the Sheriff's Sale. However, a closer look shows that the opposite is true. This Court did not read the Stipulation as requesting, and does

---

[14] This Court notes that it does not intend to suggest that application of the *Rooker-Feldman* Doctrine is co-extensive with the application of issue or claim preclusion. *See, e.g., Lemonds v. St. Louis County*, 222 F.3d 488, 494 (8th Cir. 2000) ("federal plaintiffs cannot by artful pleading obtain a hearing of disguised state court appeals that would otherwise be subject to a *Rooker–Feldman* bar."); *Telesco v. Telesco Fuel and Masons' Materials, Inc.*, 765 F.2d 356, 362-63 (2d Cir. 1985) ("Merely raising an alternative theory of recovery, which may still be raised in state court, is not enough to differentiate the federal suit from the state suit."); *Marran v. Marran*, 376 F.3d 143, 149 (3d Cir. 2004) ("The *Rooker–Feldman* doctrine bars lower federal courts from exercising jurisdiction over a case that is the *functional equivalent* of an appeal from a state court judgment.") (emphasis added); *Smalis v. Allegheny County Bd. Of Property Assessment, Appeal & Review*, 2014 WL 2039964 (W.D. Pa. May 16, 2014) ("federal district courts lack subject matter jurisdiction over challenges that are *the functional equivalent* of an appeal of a state court judgment") (emphasis added).

not read the Consent Order as providing for, the avoidance of the Sheriff's Sale or the cancellation of its results. By entering the Consent Order, this Court intended to give effect to the Sheriff's Sale.

Through the procedure envisioned by the Stipulation, the Court was enforcing 2013 LLC's interest in the Property. This Court read the Stipulation as seeking an order to avoid the publicly-recorded ownership interest in the Property, as evidenced by the Tax Deed, acquired by 2013 LLC pursuant to the Sheriff's Sale. 2013 LLC's prepetition interest was then to be replaced by an allowed claim secured by the Debtor's restored ownership interest in the Property. 2013 LLC would therefore retain rights that originated as a result of the Sheriff's Sale.

Similarly, the Debtor is not attempting to escape the consequences of the prior state court action. The Debtor was attempting to exercise his right of redemption that he held as a natural consequence of the occurrence of the Sheriff's Sale. The Debtor, by filing the Stipulation, was fulfilling the obligations imposed by the Sheriff's Sale. Further, the Court found that the Stipulation was in compliance with Pennsylvania state law which provides that if property sold at tax sale is redeemed, the purchaser must take action to void the deed and restore record ownership to the owner. *See, e.g.,* 72 P.S. §5971o (if an owner redeems her real estate interest… "thereafter said deed shall be void and of no effect").

With this understanding in mind, this Court did not find that the Stipulation or the relief it contemplated sought the negation of the Sheriff's Sale. As a result, this Court determined that the second prong *was not satisfied*.

**Whether the Judgment was Rendered Prior to the Debtor's Bankruptcy?**

The parties do not dispute that the Sheriff's Sale occurred prior to the Debtor's bankruptcy. As a result, the third prong was satisfied.

13

**Is the Plaintiff Seeking Review of a State Judgment?**

To determine whether the Debtor is seeking review of a state judgment and the Sheriff's Sale in particular, this Court must determine whether the adjudication of the Debtor's hypothetical §§544(a) or 548(a) claims would require this Court to review the merits of a prior state court adjudication. In no way may it be said that this Court's approval of the Stipulation would entail the review of any prior state court determination. *See, e.g.,* 72 P.S. §5860.601; *Hunter v. McKlveen*, 361 Pa. 479, 483 (Pa. 1949) (recognizing that the validity of a tax sale is "necessarily dependent on a valid assessment"). To enter the Consent Order or to otherwise confirm that the Debtor has the authority to enter into the agreement embodied by the Consent Order, this Court is not required to revisit any finding the Sheriff's Sale was contingent upon. For example, this Court was not required to address the valuation of the Property as determined pursuant to the Sheriff's Sale or the fact that some unpaid amount was owed to the City which entitled it to sell the Property.

Accordingly, this Court determined that the fourth prong, along with the second prong, was not satisfied and this Court confirmed that the *Rooker-Feldman* Doctrine did not divest this Court of its jurisdiction to grant the relief sought by the Stipulation.

**CONCLUSION**

Consistent with this Court's foregoing analysis, this Court determined that its consideration of the Stipulation and subsequent entry of the Consent Order did not implicate the *Rooker-Feldman* Doctrine. The relief sought by the Settling Parties and granted by this Court *did not negate* a prior state court judgment. To the contrary, the Consent Order simply represented the Settling Parties' resolution of the dispute arising from the Debtor's exercise of his right of redemption and the effect that this act had upon the rights of 2013 LLC that it

14

obtained pursuant to the Sheriff's Sale.

BY THE COURT:

_Magdeline D. Coleman_

MAGDELINE D. COLEMAN
UNITED STATES BANKRUPTCY JUDGE

DATED: OCTOBER 17, 2014

Jane P. Nylund, Esquire
Philadelphia Legal Assistance
718 Arch Street, Suite 300 N
Philadelphia, PA  19106

Irwin L. Trauss, Esquire
Philadelphia Legal Services
42 South 15th Street, Suite 500
Philadelphia, PA  19102

Jacqueline M. Chandler, Esquire
Office of the Chapter 13 Trustee
P.O. Box 40119
Philadelphia, PA  19106

William C. Miller, Esquire
Chapter 13 Trustee
111 S. Independence Mall, Suite 583
Philadelphia, PA  19106

United States Trustee
833 Chestnut Street, Suite 500
Philadelphia, PA  19107

Courtroom Deputy
Eileen Godfrey