IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| IN RE | : | CHAPTER 13 |
|    OTIS WILLIAM TERRY, | : | |
| DEBTOR. | : | BANKRUPTCY NO. 13-14780-MDC |

## MEMORANDUM[1]

BY: MAGDELINE D. COLEMAN, UNITED STATES BANKRUPTCY JUDGE

### INTRODUCTION

On February 20, 2015, the City of Philadelphia (the "City") filed a Notice of Appeal seeking review of Orders entered by this Court on February 10, 2015 (the "Order"), (1) denying the City's Motion to Dismiss Case dated October 17, 2014 [Docket No. 108] (the "City's Motion"), and (2) confirming the First Amended Chapter 13 Plan dated June 25, 2014 [Docket No. 81] (the "Amended Plan"), filed by Otis William Terry, Jr. (the "Debtor"). This Memorandum is intended to be consistent with this Court's February 6, 2015, bench rulings and is submitted pursuant to Local Rule 8001-1(b) to further expound upon the reasons for the rulings.

### FACTUAL AND PROCEDURAL BACKGROUND

On February 6, 2015, this Court held a hearing (the "Hearing") to address (1) confirmation of the Amended Plan, (2) the City's Motion, (3) the Trustee's Motion for Dismissal (the "Trustee's Motion", and together with the City's Motion, the "Dismissal Motions"), and Debtor's Objection to the City's priority claim ("Claim Objection").[2]

---

[1] This disposition is not appropriate for publication.
[2] The Debtor withdrew the Claim Objection on the record at the Hearing after reaching an agreement with the City on the amount of the City's allowed claim.

**The Amended Plan**

The Debtor's Amended Plan provides for payment in full of all allowed claims including the secured claim of 2013 North 16th Street, LLC ("2013 LLC"),[3] and the priority claims of the City and the Commonwealth of Pennsylvania for unpaid income taxes. The City opposed confirmation of the Amended Plan on the grounds that it (1) was inconsistent with the Consent Order entered into between the Debtor and 2013 LLC, (2) did not properly provide for payment of real estate taxes, (3) did not properly provide for the City's priority claim, and (4) was not proposed in good faith because, among other things, it does not seek to pay prepetition debts, misused the Bankruptcy Code by improperly creating a debt from the tax sale of the Debtor's residence, and prevented creditors from pursuing their rights to address post-petition debts. Objection dated September 29, 2014 [Docket No. 96] (the "City's Objection"), ¶¶9-29.

**The City's Motion**

Pursuant to the City's Motion, the City sought dismissal of the Debtor's case. In support of dismissal, the City essentially reiterated its various objections to confirmation including that the Debtor's case was filed in bad faith. The City asserted that the Debtor (1) "was seeking to regain ownership of the Subject Property and not seeking to redress his debts," and (2) "seek[s] to misuse the Bankruptcy Code by improperly creating a debt arising from the avoidance of the Tax Sale, and prevents creditors from pursuing their rights to address defaults on post-petition debts." City's Motion, ¶¶18-19.

The Debtor filed a response to the City's Motion on November 14, 2014 (the "Answer") [Docket No. 120]. The Debtor opposed the City's Motion asserting (1) the City lacked standing to oppose the Stipulation and the Amended Plan, (2) the Amended Plan provided that any unpaid prepetition real estate taxes or water bills, to the extent any existed, would be paid outside of the plan and contained no provisions preventing the City from collecting same, (3) the Amended Plan provided for payment in full of the City's priority claim, (4) the Debtor and his sister are the record owners of the Property and solely

---

[3] 2013 LLC was the purchaser at the tax sale of the Debtor's real property located at 7128 Mount Airy Place, Philadelphia, PA (the "Property"). Pursuant to a Consent Order dated September 18, 2014 [Docket No. 92] (the "Consent Order"), the Debtor and his sister agreed to pay a total of $125,624.66 to 2013 LLC to redeem the Property.

2

liable for post-petition real estate taxes and water and/or payment of real estate taxes and water bills which were being paid and were up to date, and (5) the Debtor filed the bankruptcy for the purpose of paying prepetition claims as expressly provided for under the Bankruptcy Code. Answer, ¶¶11, 13, 15 & 18.

### The Trustee's Motion

While initially recommending confirmation of the Debtor's initial plan, the Trustee withdrew his recommendation and filed the Trustee's Motion. The Trustee requested dismissal of the Debtor's case arguing that the Debtor's unreasonable delay was prejudicial to creditors and thus warranted denial of confirmation pursuant to §1307(c)(1).

### The Hearing

The Trustee and the City appeared at the Hearing in support of the Dismissal Motions. The City also appeared in connection with the City's Objection. In addition to the grounds asserted in their written pleadings, both parties contended that the Debtor's intervening death required dismissal of the case. The City asserted that dismissal was required because (1) the Debtor no longer qualified to be a "debtor" under 11 U.S.C. Section 109(e), (2) the Court could not confirm the Debtor's Amended Plan because he was no longer alive to fund the plan and confirmation was not in the best interest of the City, and (3) the Debtor's case was filed in bad faith. Like the City, the Trustee argued that dismissal was required because the Debtor's death meant no successful plan could occur.

After the parties presented their legal arguments, the parties agreed that the issues were limited to the application of Fed. R. Bankr. P. 1016. As discussed below, the Court concluded that, pursuant to Fed. R. Bankr. P. 1016, dismissal was not required unless the case could not be further administered and it was not in the best interest of creditors to allow the case to continue. The Debtor then presented evidence in support of its position that further administration was possible and that further administration was in the best interest of the parties. Transcript of February 6, 2015 Hearing ("Transcript February 6, 2015"), 85:9-93:23. In addition, the parties stipulated to various facts including (1) the amount of the 2014 taxes owed to the City, (2) payments in the total amount of $84,000.40 had been made to 2013 LLC and (3) the

Debtor's sister is continuing to make payments to 2013 LLC in the amount of $1,200.00 per month. Transcript February 6, 2015, 79:4-15. Significantly, the parties agreed that, with regard to all creditors who had filed a claim, the Amended Plan was fully funded and, if confirmed, would provide for 100% payment of priority and non-priority claims.

The Debtor's schedules reflect that he never contemplated funding his Plan with his future income. Rather, since at least July 29, 2013 when the Debtor's amended schedules were filed, all parties in interest have understood that Patricia Terry, the Debtor's sister, would be responsible for funding the Debtor's reorganization. As acknowledge by the Trustee at the confirmation hearing, the Trustee was holding sufficient funds to make all payments called for by the Amended Plan and no further payments to the Trustee would be required. Based upon the status of the funding of the Amended Plan, this Court concluded that further administration was possible and in the best interest of the estate's creditors.

With regard to this Court's consideration of the Amended Plan, the City acknowledged that the alleged absence of Debtor's good faith was the only legal reason that prevented this Court from confirming the Amended Plan. Transcript February 6, 2015, 7:13-8:21; 83:25-84:2. The City further acknowledged that its arguments regarding bad faith in the plan confirmation context were identical to its arguments in the dismissal context. To resolve the issue of good faith, this Court relied on its prior determination that the Debtor had invoked this Court's jurisdiction for a valid bankruptcy purpose.

For the reasons stated on the record and elaborated herein, this Court denied the City's Motion, overruled the City's Objection and confirmed the Amended Plan.

## LEGAL DISCUSSION

Despite this Court's issuance of two prior opinions addressing the issue,[4] the substance of the City's Motion and its bad faith objections to confirmation relate to the Debtor's attempt to exercise his right of redemption and to pay the redemption amount over the plan period. Because of the overlap of factual issues underlying this Court's prior determinations and this Court's resolution of the Motion, this Court makes reference to its prior opinions that addressed the propriety of the Debtor's use of §1322(b) to

---

[4] *In re Terry*, 505 B.R. 660 (Bankr. E.D. Pa. 2014) ("*Terry I*") and *In re Terry*, 521 B.R. 90 (Bankr. E.D. Pa. 2014) ("*Terry II*").

4

redeem the Property[5] and incorporates the definitions contained therein.

**The City's Standing**

In response to the City's objection, the Debtor challenged the City's standing to object to the Plan. Pursuant to §1324(a), "[a] party in interest may object to confirmation of the plan." 11 U.S.C. §1324(a). The City is the holder of a claim in the amount of $652.00 and the Plan calls for the payment in full of the City's claim. As the holder of a claim against the Debtor, the City is a party in interest within the meaning of §1324(a). However, the City's status does not confer upon it a carte blanche to object to any provision of the Debtor's Plan. *In re Jongsma*, 402 B.R. 858, 867-68 (Bankr. N.D. Ind. 2009); *In re Jensen*, 369 B.R. 210, 239-30 (Bankr. E.D. Pa. 2007). While this Court may harbor its doubts as to the propriety of allowing the City to heard on matters that do not implicate its legally protected interests,[6] this Court deferred to the City's status as a creditor and allowed the City to be heard with regard to the substance of its Motion and objections to plan confirmation. *See, e.g., Jensen*, 369 B.R. at 231 ("I find that his status as creditor vests him with a practical stake in the outcome of this case: he has a pecuniary interest in ensuring that his claims against the Debtor are not discharged in a bankruptcy that he contends was not filed in good faith. As such, James has standing to assert that the 7th Amended Plan has not been filed in good faith...").

**Application of Fed. R. Bankr. P. 1016, §1325(a)(1)**

At the Hearing, both the Trustee and the City argued that the intervening death of the Debtor prevented confirmation of the Plan. Presumably, this objection relates to whether the Plan complies with the Bankruptcy Code as required by §1325(a)(1). In overruling this objection, this Court relied on the text of Fed. R. Bankr. P. 1016 that provides in relevant part:

> If... [an] individual's debt adjustment case is pending under chapter 11, chapter 12, or chapter 13, the case may be dismissed; or *if further administration is possible and in the best interest of the parties*, the case may proceed and be concluded in the same manner, so far as possible, as though the death or incompetency had not occurred.

---

[5] *Terry I*, at 665-66 ("the Debtor may, consistent with §1322(b), provide for the treatment of the Movant's claim in the Plan by payment of the Redemption Amount over the Plan period.").
[6] *See, e.g., City of Philadelphia v. F.A. Realty Investors Corp.*, 95 A.3d 377, 384 (Pa. Cmwlth. 2014) ("The purpose of sheriff's sales under the [Act]... is *not to strip the owner of his or her property* but to collect municipal claims.") (emphasis added) (*quoting City of Philadelphia v. Manu*, 76 A.3d 601, 606 (Pa. Cmwlth. 2013)).

Fed. R. Bankr. P. 1016 (emphasis added).

Because the Amended Plan was not dependent on the Debtor's income, this Court concluded that further administration of the Debtor's case was possible. *See, e.g.*, Transcript February 6, 2015, 43:20-21. In addition, this Court concluded that further administration of the Debtor's case was in the best interest of the parties because the Plan called for a 100% distribution to all creditors.[7] Finding that Rule 1016 controlled its determination,[8] this Court concluded that the Debtor's case may proceed as though the Debtor's death had not occurred.

**Bad Faith, 11 U.S.C. §§1325(a)(3) & 1325(a)(7)**

In support of its position that the Debtor acted in bad faith when he invoked this Court's jurisdiction, the City made two arguments. First, the City once again reiterated its position that the relief obtained by the Debtor pursuant to the Consent Order entered by this Court on September 18, 2014 (the "Consent Order") constitutes an improper bankruptcy purpose because it caused the avoidance of the prepetition Sheriff's Sale. *See, e.g.*, Transcript February 6, 2015, 22:12-23:23. For whatever reason, the City, in making this argument, has ignored the express language of this Court's prior decisions. As explained in *Terry II*, this Court rejected the City's position that the Consent Order caused the avoidance

---

[7] Although the Amended Plan provided for payment in full of the City's claim, the City appeared to argue that confirmation was not in its best interest because confirmation would, by allowing a party with limited financial resources to remain in possession of the Property, potentially interfere with the "expeditious" collection of postpetition real estate taxes. Transcript February 6, 2015, 53:7-57:17; 72:23-75:9. Not only did this Court express its skepticism of the legal merit of the City's position that the stay remains in effect after confirmation, the City did not provide any evidence or identify any facts whatsoever in support of this argument. Transcript February 6, 2015, 105:14-107:20. (discussing applicability of the automatic stay to post-confirmation collection actions relating to postpetition claims); *see also In re Blaylock*, 394 B.R. 359, 362, n.5 (Bankr. E.D. Pa. 2008).

[8] The City argued that application of §109(e) trumped the provisions of Rule 1016. Transcript February 6, 2015, 48:11-49:13. The City's argument is not consistent with long-standing principles. *In re Perkins*, 381 B.R. 530 (Bankr. S.D. Ill. 2007) ("§109(e) establishes an eligibility standard and is not affected by postpetition events"). In *Perkins*, a Bankruptcy court considered and rejected the same argument. In relevant part, the Bankruptcy court wrote:

> Contrary to the Trustee's assertions, there is no reason to ignore Bankruptcy Rule 1016 in the Chapter 13 context. Bankruptcy Rule 1016 is consistent with the Bankruptcy Code as it follows the general presumption that the death of the debtor shall not abate the bankruptcy proceeding, but provides for the dismissal of a Chapter 13 case at the discretion of the bankruptcy court. The Advisory Committee Note states that "[i]n a chapter 11 reorganization case or chapter 13 individual's debt adjustment case, the likelihood is that the case will be dismissed." This dismissal is not for the sole reason that the debtor has died, but because, as a practical matter, the funding of the plan is based on the debtor's submission of future earnings. Once the debtor has died, further administration may not be possible due to an inability to fund the plan.

*In re Perkins*, 381 B.R. 530, 536-37 (Bankr. S.D. Ill. 2007).

Adopting the reasoning contained in *Perkins*, this Court concluded that the eligibility requirements of §109 define who may initiate a bankruptcy case and are not affected by postpetition events. Because the funding of the Plan was not based upon the Debtor's future earnings, this Court saw no need to dismiss the case.

of the Sheriff's Sale. As this Court explicitly stated in *Terry II*,

> On its face, it appears that the [Debtor] is complaining of injuries caused by the Sheriff's Sale. However, a closer look shows the opposite is true. This Court did not read the Stipulation as requesting, and does not read the Consent Order as providing for, the avoidance of the Sheriff's Sale or the cancellation of its results. By entering the Consent Order, this Court intended to give effect to the Sheriff's Sale.

*Terry II*, 521 B.R. at 98.

Because the City's argument ignored this Court's prior determination that the Bankruptcy Code entitled the Debtor to act in the manner he did, this Court again found that the Debtor's filing for bankruptcy for the purpose of preserving his interest in his home was a valid bankruptcy purpose. Transcript February 6, 2015, 26:2-28:5. As explained in *Terry I*, this Court determined that pursuant to §1322(b) the Debtor was entitled to provide payment of the Redemption Amount over the course of the Plan period. Once this Court confirmed that the Code entitled the Debtor to act as he did, this Court could see no basis to infer that the Debtor acted in bad faith. *See, e.g., In re Integrated Telecom Express, Inc.*, 384 F.3d 108, 127 (3d Cir. 2004) ("we believe it to be a truism that it is not bad faith to seek to avail oneself of a particular protection in the Bankruptcy Code-Congress enacted such protections with the expectation that they would be used."); *In re Snipes*, 314 B.R. 898, 902 (Bankr. S.D. Ga. 2004) ("Utilization of Chapter 13 relief to save one's home is clearly a common and valid reason for filing and not the type of action that, standing alone, evidences bad faith."). Even if this Court had determined that the Debtor was not entitled to pay the Redemption Amount over the Plan period, this Court would not be able to infer bad faith. Despite the promulgation of this Court's discourse contained in *Terry I*, the viability of a debtor's use of Chapter 13 to redeem a property sold a tax sale remains far from conclusively decided. This Court can conceive of no basis to impute bad faith based upon a debtor's intent to utilize bankruptcy for purposes that have not been unequivocally foreclosed by binding precedent. *See, e.g., In re 15375 Memorial Corp.*, 430 B.R. 142, 150 (Bankr. D. Del. 2010) ("the court should avoid hindsight bias by considering the reasonableness of the party's belief at the time of the filing.").

Next, the City argued that the Debtor's bad faith may be inferred from the fact that he was not

insolvent when he filed for Chapter 13 relief. *See, e.g.,* Transcript February 6, 2015, 7:25-8:3; 28:19-31:14. As this Court stated at the Hearing, the City's argument is wholly without merit. Transcript February 6, 2015, 34:4-18. The City's argument completely ignores and is contrary to binding Third Circuit precedent. "To be sure, a debtor need not be insolvent before filing for bankruptcy protection." *Integrated Telecom Express, Inc.*, 384 F.3d at 127.[9] Without any additional basis to infer that the Debtor had invoked this Court's jurisdiction for an improper bankruptcy purpose, this Court denied the City's Objection.

## CONCLUSION

Consistent with this analysis, this Court determined that the City's objections to confirmation of the Plan as well as its Motion were without merit, no basis for dismissal of the Debtor's case was established, and confirmation of the Amended Plan was warranted.

BY THE COURT:

MAGDELINE D. COLEMAN
UNITED STATES BANKRUPTCY JUDGE

DATED: MARCH 13, 2015

---

[9] *United States v. Garrett*, 504 Fed. Appx. 132, 135 n.1 (3d Cir. 2012) ("Counsel is cautioned in future cases to be mindful that "[a] lawyer *shall not knowingly* ... fail to disclose to the tribunal legal authority in the controlling jurisdiction known to the lawyer to be directly adverse to the position of the client...." Pa. Rule of Prof. Conduct 3.3(a)(2) (2012)") (emphasis added).